UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEWIS & CLARK REGIONAL WATER SYSTEM, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CARSTENSEN CONTRACTING, INC., <br><br> Defendant/Third-Party Plaintiff, <br><br> vs. <br><br> AMERON WATER TRANSMISSION GROUP, LLC, <br><br> Third-Party Defendant. | 4:18-CV-04067-RAL <br><br><br> OPINION AND ORDER DENYING MOTION TO TRANSFER VENUE |

Plaintiff Lewis & Clark Regional Water System, Inc. (Lewis & Clark) sued Defendant/Third-Party Plaintiff Carstensen Contracting, Inc. (Carstensen) in South Dakota state court alleging breach of contract. Carstensen removed the case to this Court and filed a third-party action against Third-Party Defendant Ameron Water Transmission Group, LLC (Ameron). Ameron filed a Motion to Transfer Venue to the District of Minnesota under 28 U.S.C. § 1404(a), Doc. 13, which Lewis & Clark opposed, Doc. 16. This Court held oral argument on the motion on August 28, 2018,[1] at which time Carstensen joined with Lewis & Clark in opposing the motion. Doc. 40. For the reasons stated below, Ameron's Motion to Transfer Venue is denied.

---

[1] Ameron filed a Rule 12(b)(2) Motion to Dismiss and supporting memorandum, Docs. 38-39, late on August 27, 2018, arguing that there is no personal jurisdiction over Ameron in the District of South Dakota. Briefing on that motion has not been completed, so this Opinion and Order does not address that Motion to Dismiss.

1

I.      **Facts Pertinent to Motion to Transfer[2]**

Lewis & Clark's breach of contract action, commenced under South Dakota law by serving a Summons on Carstensen on May 17, 2018, concerns part of a massive multistate treated water pipeline system (the System) to bring potable water from the Missouri River to communities in eastern South Dakota, southwest Minnesota, and northwest Iowa. Doc. 1 at 1; Doc. 10 at ¶ 7. The System started in 2003, and, when complete, the System will span over 330 miles of total pipeline. Doc. 17-1 at ¶ 13. The System is funded by federal, state, and local monies. Doc. 17-1 at ¶ 15. The State of Minnesota has already funded $5.45 million to the System. Doc. 17-1 at ¶ 15.

Lewis & Clark contracted with Carstensen to install approximately ten miles of pipeline for the System, roughly between Magnolia and Adrian, Minnesota (the Project). Doc. 10 at ¶ 6. Specifically, the contract calls for Carstensen to install twenty-inch diameter steel pipe with a polyurethane exterior coating exhibiting a minimum adhesion strength of 1,750 pounds per square inch (psi) post-installation and 2,500 psi pre-installation. Doc. 1-1 at 5. The contract between Lewis & Clark and Carstensen provides that the governing law will be "the state in which the Project is located." Doc. 10-1 at ¶ 17.05.

To perform the contract with Lewis & Clark, Carstensen issued a Purchase Order to Ameron to supply the pipes for the Project. Doc. 10-2. The Purchase Order contains detailed specifications for the ordered pipes. Doc. 10-2. Additionally, the Purchase Order states that "[Carstensen] and [Ameron] hereby submit to the nonexclusive jurisdiction of the United States District Court for the Central District[3] of Minnesota." Doc. 10-2 at ¶ 17 (emphasis omitted).

---

[2] This Court makes no conclusive factual findings at this time and draws the facts from the complaint, affidavits, and exhibits submitted to this point, as well as from admissions by counsel for the parties at the August 28, 2018 hearing and uncontested information about travel and distance.
[3] There is just one District of Minnesota, and no "Central District of Minnesota." The District of Minnesota is organized into four divisions, but none of the divisions are known as the Central Division

The pipes supplied by Ameron and installed by Carstensen allegedly did not meet the agreed to specifications, and Lewis & Clark believes that about nine of the ten miles of pipes must be replaced. Doc. 16 at 2. On March 28, 2018, the Project engineer, Banner Associates, notified Carstensen that the pipes were being rejected because of defective coating. Doc. 17-3. Carstensen maintains that the alleged failure of the pipes to meet the coating specifications is due to manufacturing problems in Mexico encountered by Ameron. Doc. 1-1 at ¶ 7.

On April 17, 2018, Carstensen received an email from Lewis & Clark that stated, in part:

> Carstensen and AMERON have long said they will "make Lewis & Clark whole . . . ." Be assured we will have no choice but to vigorously pursue every legal avenue possible to ensure that happens . . . . At the end of the day, if this must proceed to court, it will be a simple case from L&C's perspective: it is undisputed L&C did not get what it paid for and a local jury (including the taxpayers who paid the original bill) will be eager to make sure L&C collects every dime it is entitled to.

Doc. 10-3 at 3. Carstensen forwarded this email to Ameron, advising Ameron that "[Lewis & Clark is] growing very impatient with us . . . . I [l]ook forward to Ameron[']s response . . . ." Doc. 10-3 at 2.

After receiving this email, Ameron, according to Lewis & Clark, "went dark for a month." Doc. 16 at 7. On May 15, 2018, Carstensen received Ameron's draft Complaint for Declaratory Relief against Carstensen, Lewis & Clark, Rustnot Corrosion Control Services, Inc. (Rustnot), and William Spickelmire (Spickelmire).[4] Doc. 26 at 5; Doc. 11 at 1. Carstensen apparently advised Lewis & Clark that Ameron was going to file suit.

---

of the District of Minnesota. Ameron at the hearing recognized that this provision of the contract should be read as its consent to the nonexclusive jurisdiction of the District of Minnesota.

[4] Rustnot, through its employee, Spickelmire, prepared portions of the contract and bidding documents related to corrosion protection of the pipe for Lewis & Clark. Doc. 10 at ¶ 12; Doc. 10-1 at 4. Rustnot apparently is headquartered in Boise, Idaho.

On May 17, 2018, Lewis & Clark commenced this action in South Dakota state court by serving Carstensen with a Summons.[5] Doc. 1-1 at 1. On May 21, 2018, Lewis & Clark served counsel for Carstensen with a copy of its Complaint alleging breach of contract. Doc. 1-1 at 2–4. Lewis & Clark seeks to recover: (a) the expense to remove and replace the defective pipe; (b) liquidated damages totaling $1,350/day from November 17, 2017, to the date the project is substantially complete; and (c) consequential damages. Doc. 1-1 at ¶¶ 8–10. On May 22, 2018, Ameron filed its declaratory judgment action in the United States District Court for the District of Minnesota (Second Action).[6] Doc. 17-1. Ameron moves to transfer this action to the District of Minnesota where Ameron's declaratory judgment action is pending. Doc. 13 at 1; Doc. 17-1; Doc. 26 at 2.

Lewis & Clark is a South Dakota non-profit 501(c)(4) corporation with its principal place of business in Tea, South Dakota. Doc. 17-1 at ¶ 3. Lewis & Clark's executive and administrative staff work in South Dakota. Doc. 17 at ¶ 5. Banner Associates, the Project engineer, is headquartered in Sioux Falls, South Dakota. Doc. 17 at ¶ 6; Doc. 17-3. Carstensen is a Minnesota corporation with its principal place of business in the southwest Minnesota town of Pipestone. Doc. 1 at ¶ 10. Carstensen's employees primarily reside in Minnesota. Doc. 10 at ¶ 3. Ameron is a Delaware limited liability company with its principal place of business in Rancho Cucamonga, California. Doc. 40.

**II.    Discussion**

Ameron's motion to transfer argues that the factors analyzed under § 1404(a) justify transfer to the District of Minnesota. Lewis & Clark responds that its choice of venue in South

---

[5] Under South Dakota state procedure, a civil suit is deemed commenced upon service of a summons. SDCL § 15-2-20.

[6] The Second Action is captioned as <u>Ameron Water Transmission Group, LLC v. Carstensen Contracting, Inc., et al.</u> (D. Minn. 18-CV-1405). Doc. 17-1 at 1.

4

Dakota is proper under the "first-filed rule," but Ameron questions whether Lewis & Clark's action deserves any deference as being first-filed. Whether a suit is first-filed or whether transfer is justified under § 1404(a) are separate questions with separate analyses. Zimmer Enters., Inc. v. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 989 (S.D. Ohio 2007); see also Diamond Mowers, Inc. v. S. Vegetation Mgmt, LLC, No. 4:07-cv-04109-KES, at *5–10 (D.S.D. Mar. 13, 2008) (analyzing a motion to dismiss under the first-filed rule and a motion to transfer venue under § 1404(a)). The first-filed rule does not "'trump' an analysis pursuant to § 1404(a)." Terra Int'l, Inc. v. Miss. Chem. Corp., 922 F. Supp. 1334, 1349 (N.D. Iowa 1996), aff'd on other grounds, 119 F.3d 688 (8th Cir. 1997). For example, "a determination that the [South Dakota] action [is] the first-filed and that none of the exceptions to the first-to-file rule exist, does not preclude the Court from determining that transfer of venue is proper under 28 U.S.C. § 1404(a)." Zimmer Enters., Inc., 478 F. Supp. 2d at 989; see generally Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc., 830 F. Supp. 2d 697, 711 (D. Minn. 2011) (reasoning that the analysis under § 1404(a) is "distinct" from the analysis under the first-filed rule). Accordingly, this Court considers both the first-filed rule and § 1404(a) in considering whether to grant the motion to transfer.

**A. First-Filed Rule**

The "first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993) (citing U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990)); see also Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985) (stating that "the first court in which jurisdiction attaches has priority to consider the case"). The first-filed rule "conserve[s] judicial resources and avoid[s] conflicting rulings." Nw. Airlines, Inc., 989 F.2d at

1006 (citing Goodyear, 920 F.2d at 488). However, the rule "is not intended to be rigid, mechanical, or inflexible." Id. at 1005 (quoting Goodyear, 920 F.2d at 488). The rule "yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation." Id. at 1006 (quoting Goodyear, 920 F.2d at 488). The party opposing the first-filed rule has the burden of showing compelling circumstances. D & L Distribution, LLC v. Agxplore Int'l, LLC, 959 F. Supp. 2d 757, 766 (E.D. Pa. 2013).

In this case, the fact that Lewis & Clark started this action first is undisputed. Doc. 1 at ¶ 1. On May 17, 2018, Lewis & Clark commenced this action in South Dakota state court by service of a Summons on Carstensen. Doc. 1-1 at 1. On May 21, 2018, Lewis & Clark served counsel for Carstensen with a copy of its Complaint. Doc. 1-1 at 2–4. On May 22, 2018, Ameron started the Second Action by filing its declaratory judgment Complaint in the District of Minnesota. Doc. 17-1. Therefore, the current action is first-filed. Ameron, however, argues that "Lewis and Clark's choice of forum should be afforded little or no weight due to their forum shopping" and race to the courthouse. Doc. 13 at 9–10. In other words, Ameron argues the first-filed rule should not apply here.

The parties dispute whether there are compelling circumstances that serve the interests of justice to depart from the first-filed rule. See Nw. Airlines, Inc., 989 F.2d at 1006 (citing Goodyear, 920 F.2d at 488). Compelling circumstances that may justify departing from the first-filed rule can be shown by "two red flags" according to Eighth Circuit precedent. Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999). "Even if both red flags are present, however, [i]n the absence of bad faith, the mere presence of red flags does not necessarily warrant setting aside the first-to-file rule." Hearth & Home Techs., Inc. v. J & M Distrib., Inc., No. 12-

CV-00686 SRN/TNL, 2012 WL 5995232, at *5 (D. Minn. Nov. 30, 2012) (quotations and internal quotation marks omitted).

The first red flag is notice on the part of the first-filed party that the other party was going to file suit. Id. A court can choose not to apply the first-filed rule if, after a party receives notice that the other party is going to file suit, the notified party "raced to the courthouse to usurp [the other party's] forum choice." Anheuser-Busch, Inc., 167 F.3d at 419; see also Nw. Airlines, Inc., 989 F.2d at 1007 (holding that a letter that "gave no indication that a lawsuit was imminent" was insufficient to be a compelling circumstance to depart from the first-filed rule).

Here, red flags rise on both sides because both Lewis & Clark and Ameron were aware of the other likely proceeding with a lawsuit. The timeline of events is as follows:

- March 28, 2018: The Project engineer notified Carstensen that the Ameron-supplied pipes were rejected due to defective coating. Doc. 17-3.
- April 17, 2018: Ameron learned that Lewis & Clark was threatening legal action. Doc. 10-3.
- May 15, 2018: Carstensen received a draft Complaint of the Second Action from Ameron and alerted Lewis & Clark. Doc. 26 at 5.
- May 17, 2018: This action by Lewis & Clark was commenced. Doc. 1 at ¶ 1.
- May 22, 2018: The Second Action by Ameron was commenced. Doc. 17.

In all likelihood, Ameron would not have drafted a Complaint in May if it had not learned in April that Lewis & Clark was threatening suit, and Lewis & Clark likely would not have served a Summons alone on May 17 to start a South Dakota state law suit if it had not learned that a suit from Ameron was impending.

Lewis & Clark's apparent knowledge of Ameron's impending suit does not necessarily warrant departing from the first-filed rule under the facts of this case. See Hearth & Home Techs., Inc., 2012 WL 5995232, at *5 (reasoning that the presence of both red flags does not require ignoring the first-filed rule). After all, Ameron was on notice first of Lewis & Clark's intent to sue. In an April 17, 2018 email sent from Lewis & Clark to Carstensen and forwarded on to

Ameron, Lewis & Clark stated, in part: "Carstensen and AMERON have long said they will 'make Lewis & Clark whole . . . .' Be assured we will have no choice but to vigorously pursue every legal avenue possible to ensure that happens . . . ." Doc. 10-3 at 3. This email was sent one month before Lewis & Clark heard of Ameron's intent to file. Doc. 10-3; Doc. 26 at 5; see Anheuser-Busch, Inc., 167 F.3d at 419 (reasoning that a less than two-week period "from when Supreme sent its cease and desist letter to Anheuser to the time Supreme filed the Florida action . . . suggests that Anheuser raced to the courthouse to usurp Supreme's forum choice"). Under these circumstances, this Court cannot conclude that Lewis & Clark somehow acted in bad faith in filing its suit in South Dakota to justify departing from the first-filed rule.

The second red flag that may justify departing from the first-filed rule is that the first-filed action is for declaratory judgment rather than for damages or equitable relief. Nw. Airlines, Inc., 989 F.2d at 1007; Anheuser-Busch, Inc., 167 F.3d at 419. "[D]eclaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." Prudential Ins. Co. of Am. v. Does, 140 F.3d 785, 790 (8th Cir. 1998). A suit for a declaratory judgment "may be more indicative of a preemptive strike than a suit for damages or equitable relief." Nw. Airlines, Inc., 989 F.2d at 1007. Here, Lewis & Clark seeks to recover damages from Carstensen under a breach of contract theory. Doc. 1-1 at ¶¶ 8–10. Therefore, the second red flag does not fly regarding Lewis & Clark's complaint. Rather, it is Ameron's Second Action seeking declaratory judgment relief only that bears the hallmark of a case filed "defensively to deny a prospective plaintiff's choice of forum." Nw. Airlines, Inc., 989 F.2d at 1007. Ameron has not shown compelling circumstances under the "two red flags" noted in Eighth Circuit precedent to justify ignoring the first-filed rule. See Anheuser-Busch, Inc., 167 F.3d at 419. Thus, Lewis & Clark has the benefit

of a rebuttable presumption that its choice of venue in South Dakota is proper under the first-filed rule.

**B. Venue Analysis Under § 1404(a)**

Ameron argues that this case should be transferred to Minnesota under 28 U.S.C. § 1404(a). Doc. 13 at 6. Section 1404(a) allows a district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice" to "any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). No party disputes that this action "might have been brought" in the District of Minnesota. See 28 U.S.C. § 1391; Doc. 13 at 13; Doc. 16 at 12. Therefore, this Court may transfer this case to Minnesota if it determines transfer is warranted under § 1404(a).

The language of § 1404(a) implies that there are just two factors to consider—"the convenience of the parties and witnesses" and "the interest of justice." See 28 U.S.C. § 1404(a). The Supreme Court of the United States, however, views § 1404(a) as calling for courts "to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). In turn, rather than adopting "an exhaustive list of specific factors to consider" when evaluating a motion to transfer, the Eighth Circuit has directed district courts to "weigh any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quotations and internal quotation marks omitted); see Terra Int'l, Inc., 119 F.3d at 696 (approving of multi-factored analysis employed by district courts). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc., 119 F.3d at 695.

**1. Balance of Convenience**

Section 1404(a) allows transfer "for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). In Terra International, Inc., the Eighth Circuit described a district court decision as having "meticulously analyzed" this part of § 1404(a) when evaluating "Balance of Convenience" by considering the following five factors: "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." Terra Int'l, Inc., 119 F.3d at 696. Although other Eighth Circuit case law declines to adopt specific factors, see In re Apple, Inc., 602 F.3d at 912, analysis of these five factors helps to guide evaluating the balance of the convenience.

First, as to convenience of the parties, venue in the Southern Division of the District of South Dakota with its courthouse in Sioux Falls is more convenient to Lewis & Clark and Carstensen, though perhaps a bit less convenient to Ameron. Lewis & Clark is a South Dakota corporation with its principal place of business in Tea, South Dakota, which is very close to Sioux Falls. Doc. 17-1 at ¶ 3. Carstensen is a Minnesota corporation with its principal place of business in Pipestone, Minnesota, which is in southwestern Minnesota. Doc. 1 at ¶ 10. The Sioux Falls federal courthouse is about a forty-five-minute drive from Pipestone, but the nearest District of Minnesota courthouse in downtown Minneapolis is about a four-hour drive from Pipestone. Doc. 1 at ¶ 10. Carstensen made known at the hearing that it opposes transfer of venue because litigation in the District of Minnesota is less convenient to it. Doc. 40. Ameron is a Delaware limited liability company with its principal place of business in Rancho Cucamonga, California. Doc. 40. Neither the District of South Dakota nor the District of Minnesota is a particularly convenient

forum for Ameron, although there are substantially more flights into the Minneapolis-St. Paul airport than into Sioux Falls.

Second, the convenience of the witnesses likewise seems to weigh in favor of retaining venue in the District of South Dakota. "The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover." Hylland v. Flaum, No. 4:16-CV-04060-RAL, 2016 WL 6901267, at *7 (D.S.D. Nov. 22, 2016) (quoting 15 Charles Alan Wright et al., Federal Practice and Procedure § 3851 (4th ed.)). Ameron has not done so, but has stated, "Carstensen's employees who worked on the project . . . are in [Minnesota]." Doc. 13 at 7. However, Ameron did not identify which Carstensen's employees would be witnesses at trial or what their testimony would be, Doc. 13 at 7, and Carstensen itself views the District of South Dakota as more convenient to its employees, Doc. 40. Banner Associates, the Project engineer, is headquartered in Sioux Falls, South Dakota, and many of the Lewis & Clark affiliated witnesses are in or near Sioux Falls. Doc. 17 at ¶ 6; Doc. 17-3. Other witnesses, such as those from Ameron and Rustnot, appear to be located outside of either South Dakota or Minnesota.

Third, the accessibility to records and documents does not militate for transfer. Lewis & Clark's records are in South Dakota, Banner Associates' records are in South Dakota, Carstensen's records are in Pipestone within the state of Minnesota but geographically far closer to the Sioux Falls federal courthouse than any Minnesota federal courthouse, and Ameron and other potential witness records appear to be located outside of Minnesota or South Dakota.

Fourth, the location where the conduct complained of occurred—here the location of the Project—is in Minnesota, albeit in the southwest corner of Minnesota. The Project is located between Magnolia and Adrian, Minnesota. Doc. 10 at ¶ 6. Magnolia is in Rock County and Adrian

11

is in Nobles County, Minnesota, which both are in the division of the District of Minnesota where cases are heard in Minneapolis. However, Magnolia is within 40 miles of the courthouse for the Southern Division of the District of South Dakota in Sioux Falls and is some 200 miles from the federal courthouse in Minneapolis. Adrian, in turn, is about 50 miles from Sioux Falls and about 190 miles from the Minneapolis federal courthouse. Therefore, when considering convenience, the location of the Project actually weighs against transfer.

Only the fifth convenience factor—the application of each state's forum law—weighs in favor of transfer. Minnesota law governs the contract dispute between Lewis & Clark and Carstensen, as well as the Purchase Order between Carstensen and Ameron. Doc. 13 at 3; Doc. 10-1 at ¶ 17.05. The presence of a choice-of-law clause is a relevant factor for the Court to consider, but it is not dispositive. ComputerUser.com, Inc. v. Tech. Publ'ns, LLC, No. Civ. 02-832(MJDJGL), 2002 WL 1634119, at *8 (D. Minn. July 20, 2002). Here, although the contract contains a Minnesota choice-of-law clause, there appear to be no particularly complicated or unique issues of state law that must be resolved. Although the fifth convenience factor favors venue in Minnesota, the other four convenience factors weigh in favor of venue remaining in the District of South Dakota.

## 2. Interest of Justice

Section 1404(a) directs courts to consider the "interest of justice." 28 U.S.C. §1404(a). Ameron contends that the interest of justice requires this case to be transferred to Minnesota because "[t]he purchase order between Ameron and Carstensen contains a Minnesota forum selection clause." Doc. 10-2 at ¶ 17. The Eighth Circuit has held that the application of a forum selection clause differs depending on whether the clause is mandatory or permissive. See Dunne v. Libbra, 330 F.3d 1062, 1063 (8th Cir. 2003). Whether a forum selection clause is mandatory or

permissive is material for purposes of the § 1404(a) analysis. Perficient, Inc. v. Priore, No. 4:16 CV 249 CDP, 2016 WL 866090, at *2–3 (E.D. Mo. Mar. 7, 2016). If a forum selection clause is mandatory, suit under the contract is exclusive to the jurisdiction stated. Dunne, 330 F.3d at 1063. To be mandatory, a forum selection clause must contain terms that "suggest exclusivity." Id. at 1064. "Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." Liberty Mut. Ins. Co. v. Milender White Constr., No. Civ. 15-5004-JLV, 2017 WL 3736630, at *6 (D.S.D. Aug. 29, 2017) (quoting Jet Co., Inc. v. Thor Indus., Inc., No. C16-3005-MWB, 2016 WL 1642663, at *3 (N.D. Iowa Apr. 25, 2016)). The forum selection clause in the Purchase Order states, "[Carstensen] and [Ameron] hereby submit to the nonexclusive jurisdiction of the United States District Court for the Central District of Minnesota." Doc. 10-2 at ¶ 17 (emphasis omitted). The clause explicitly states that jurisdiction is "nonexclusive" making the clause permissive and thus does not exclude jurisdiction or venue in South Dakota. See Liberty Mut. Ins. Co., 2017 WL 3736630, at *6.

Next, Ameron contends that this action should be transferred to the District of Minnesota in the interest of judicial economy and in the interest of the parties as being the lowest cost forum. The parties have not provided a great amount of information about anticipated litigation costs, but shifting the forum to Minnesota would make the litigation costlier for Lewis & Clark, a South Dakota corporation headquartered near Sioux Falls, and Carstensen, a Pipestone, Minnesota, business located within an hour of Sioux Falls yet about four hours from the Minneapolis federal courthouse. Ameron's other argument about judicial economy is addressed under the Terra International, Inc. factors below.

Ameron claims that Lewis & Clark was "looking to South Dakota as a more favorable forum[] and threatened Carstensen that [] they were intending to use their local advantage to deprive Defendants of a fair trial." Doc. 13 at 11. Carstensen, however, does not join in seeking transfer of venue and thus appears not to share Ameron's concern about a parochial federal jury pool in the Southern Division of the District of South Dakota. Lewis & Clark's email stated, "a local jury (including taxpayers who paid the original bill) will be eager to make sure L&C collects every dime it is entitled to," Doc. 10-3 at 3, leaving it ambiguous as to whether Lewis & Clark was referring to taxpayers in South Dakota or Minnesota. After all, the State of Minnesota already has funded $5.45 million to the System. Doc. 17-1 at ¶ 15. Therefore, the "advantage" Ameron fears is present in both South Dakota and Minnesota.

The Eighth Circuit in Terra International, Inc. commented that a district court had "meticulously analyzed" the interest of justice under § 1404(a) by considering seven factors: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, Inc., 119 F.3d at 696. Consideration of those seven factors ultimately presents a mixed picture of whether the interest of justice favors venue in South Dakota or Minnesota federal court.

First, judicial economy favors having the case in a single court where Lewis & Clark can litigate its claim that Carstensen breached the Project contract, where Carstensen can defend and present its claim that any breach stemmed from substandard polyurethane coating on pipe supplied by Ameron, and where Ameron can present its claim that it performed or that specifications for the piping done by Rustnot were improper or invalid. Carstensen is raising no issue of personal

14

jurisdiction over it in South Dakota. Ameron, by contrast, recently filed a motion to dismiss for want of personal jurisdiction over it in South Dakota, Doc. 38, which Lewis & Clark believes Ameron has waived, Doc. 40. Personal jurisdiction over Ameron in Minnesota is not an issue because Ameron consented to jurisdiction in the District of Minnesota under the Purchase Order. Thus, judicial economy may militate in favor of transfer, unless Ameron has waived a personal jurisdiction defense.

Second, the plaintiff's choice of forum is generally given considerable deference. Terra Int'l, Inc., 119 F.3d at 695. This deference is "based on an assumption that the plaintiff's choice will be a convenient one." In re Apple, Inc., 602 F.3d at 913 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255–56 (1981)). This factor favors venue remaining in South Dakota. Third, as discussed above, the comparative costs of litigation likely favor retention of the case in the District of South Dakota. Fourth, each party's ability to enforce a judgment is not much of a factor here, as any judgment against Ameron would have to be transferred to a different state anyway for collection, and this case and the Second Action are both in federal district courts where the process for transfer of judgment for collection would be the same. Fifth, there appear to be no obstacles to a fair trial in either the District of South Dakota or the District of Minnesota. Sixth and seventh, as discussed above, Minnesota law governs all aspects of this case. Thus, there are no particular choice-of-law concerns, but there is some, albeit limited here, interest in having a court in Minnesota decide disputed issues of Minnesota law. There is very little difference in general contract law between Minnesota and South Dakota, so there likely will not be much by way of disputed issues of local law, other than what might relate to Ameron's position that the pipe specifications are invalid because Rustnot and Spickelmire did not have licensure in Minnesota.

In short, the <u>Terra International, Inc.</u> interest of justice factors present a mixed picture of whether venue is better in South Dakota or Minnesota federal court. Judicial economy may or may not be served by transfer to Minnesota, and there is some small advantage to having a Minnesota federal court adjudicating Minnesota law. However, Lewis & Clark is entitled to its choice of the forum state of South Dakota, Carstensen (the defendant Lewis & Clark sued) prefers federal court in South Dakota as a venue, and litigation in Sioux Falls on balance probably costs the parties less than litigation in Minneapolis federal court.

### III. Conclusion

Considering all factors relating to the convenience of witnesses and parties in the interest of justice, no combination of the factors in this case outweigh Lewis & Clark's interest in having South Dakota as the forum for this dispute. Neither the convenience of the parties and witnesses nor the interests of justice weigh in favor of transfer. Ameron has not carried its burden of showing that the balance of the § 1404(a) factors favor transferring this case or that the court should depart from the first-filed rule. Therefore, it is hereby

ORDERED that Ameron's Motion to Transfer Venue Under 28 U.S.C 1404(a), Doc. 13, is denied.

DATED this 11th day of September, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE