UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEWIS & CLARK REGIONAL WATER SYSTEM, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CARSTENSEN CONTRACTING, INC., <br><br> Defendant/Third-Party Plaintiff, <br><br> vs. <br><br> AMERON WATER TRANSMISSION GROUP, LLC, <br><br> Third-Party Defendant. | 4:18-CV-04067-RAL <br><br><br> OPINION AND ORDER DENYING MOTION TO DISMISS |

Plaintiff Lewis & Clark Regional Water System, Inc. (Lewis & Clark) sued Defendant/Third-Party Plaintiff Carstensen Contracting, Inc. (Carstensen), alleging breach of contract. Doc. 1-1. Carstensen filed a third-party action against Third-Party Defendant Ameron Water Transmission Group, LLC (Ameron), alleging breach of contract, breach of warranty, unjust enrichment, negligence, contractual indemnity, and legal contribution and indemnity. Doc. 7. Ameron initially filed a motion to transfer venue to Minnesota under 28 U.S.C. § 1404(a), Doc. 13, which this Court denied, Doc. 42. On the day before the hearing on the motion to transfer venue, Ameron filed a Motion to Dismiss Claims of Third-Party Plaintiff Carstensen for Lack of Personal Jurisdiction, Doc. 38, which Lewis & Clark and Carstensen opposed, Docs. 46, 49. For the reasons stated below, Ameron's Motion to Dismiss Claims of Third-Party Plaintiff Carstensen is denied at this time.

1

I.  **Facts Pertinent to Motion to Dismiss**[1]

This action concerns part of a massive multistate treated water pipeline system (the System) to bring potable water from the Missouri River to communities in eastern South Dakota, southwest Minnesota, and northwest Iowa. Doc. 1 at 1; Doc. 10 at ¶ 7. Lewis & Clark started building the System in 2003, and, when complete, the System will span over 330 miles of total pipeline. Doc. 17-1 at ¶ 13. Lewis & Clark is a South Dakota nonprofit 501(c)(4) corporation with its principal place of business in Tea, South Dakota. Doc. 17-1 at ¶ 3. Lewis & Clark's executive and administrative staff work in South Dakota. Doc. 17 at ¶ 5. The System is funded by federal, state, and local monies. Doc. 17-1 at ¶ 15.

To assist with the System, Lewis & Clark retained Banner Associates (Banner), an engineering firm headquartered in Sioux Falls, South Dakota. Doc. 17 at ¶ 6; Doc. 17-3. Lewis & Clark contracted with Carstensen, a Minnesota corporation with its principal place of business in the southwest Minnesota town of Pipestone, Doc. 1 at ¶ 10, to install approximately ten miles of pipeline for the System, roughly between Magnolia and Adrian, Minnesota (the Project).[2] Doc. 10 at ¶ 6. Specifically, the contract calls for Carstensen to install twenty-inch diameter steel pipe with a polyurethane exterior coating exhibiting a minimum adhesion strength of 1,750 pounds per square inch (psi) post-installation and 2,500 psi pre-installation. Doc. 1-1 at 5.

To perform the contract with Lewis & Clark, Carstensen issued a Purchase Order to Ameron to supply the pipes for the Project, which contains detailed specifications for the ordered pipes. Doc. 10-2. After the bid for the Project was awarded, an Ameron representative traveled

---

[1] This Court makes no conclusive factual findings at this time and draws the facts from the complaint, affidavits, declaration, and exhibits submitted to this point.
[2] Pipestone, Magnolia, and Adrian are all located in southwestern Minnesota near the South Dakota-Minnesota border, making the Sioux Falls, South Dakota courthouse by far the closest to the Project and most parties and the most convenient venue on balance. Doc. 42.

2

to South Dakota and met with, among others, Senior Project Manager Scott Vander Meulen, the Banner engineer on the Project, over dinner in Tea, South Dakota, in part to discuss the Project. Doc. 50 at ¶ 3. Thereafter, Ameron supplied the pipes for the Project. Doc. 16 at 2.

During construction, Ameron representatives had numerous phone calls, email contacts, and other communications with Banner. Ameron representatives visited the Project site multiple times. Doc. 50 at ¶ 5. On those occasions, Ameron representatives would travel to South Dakota to meet Banner representatives there, and then would travel to the Project site just across the border in Minnesota. Doc. 50 at ¶ 5. At the end of the day, Ameron representatives would return to South Dakota and typically would stay overnight there. Doc. 50 at ¶ 5. While outside South Dakota, Ameron participated in 29 separate conference calls with Banner and sent a substantial number of emails regarding the Project.[3] Doc. 50 at ¶¶ 6–7.

Alleged defects with the coating of the Ameron-supplied pipes became an issue. Doc. 16 at 2. On October 5, 2017, two Ameron employees—Troy Parrack[4] and David Escamilla—attended a lengthy meeting in Sioux Falls, South Dakota, at Banner's office to discuss the problems and potential solutions for the Project with Lewis & Clark. Doc. 50 at ¶ 3; Doc. 51 at ¶ 4. On March 28, 2018, Banner, on behalf of Lewis & Clark, notified Carstensen that the pipes were being rejected because of defective coating. Doc. 17-3. Lewis & Clark believes that about nine of the

---

[3] Lewis & Clark submitted a "sampling" of the emails regarding the Project sent from Ameron to individuals in South Dakota. Doc. 50 at ¶ 7. From July 10, 2017, to September 7, 2017, Ameron sent at least nine emails to South Dakota, some which had the subject line entitled "Daily Report." Doc. 50-1.

[4] Ameron filed a Declaration of Troy Parrack, but it was silent about this meeting, did not address Ameron's contacts with South Dakota related to the Project, and centered on Ameron's lack of contacts with South Dakota sufficient to establish general personal jurisdiction over Ameron. Doc. 39-1. Ameron did not contest the information contained in the affidavits of Troy Larson and Scott Vander Meulen, see Docs. 50, 51, so there appears to be no reason for an evidentiary hearing at this time.

3

ten miles of pipes on the Project must be replaced. Doc. 16 at 2. Carstensen maintains that the alleged failure of the pipes to meet the coating specifications is due to manufacturing problems in Mexico encountered by Ameron. Doc. 1-1 at ¶ 7.

Ameron is incorporated in Delaware with its principal place of business in Rancho Cucamonga, California. Doc. 39-1 at ¶¶ 3–4. Ameron does not maintain an office, bank account, telephone number, or post office box in South Dakota, nor does it employ anyone in South Dakota. Doc. 39-1 at ¶¶ 9–10. Prior to the Project at issue in this case, Ameron had previous contacts with South Dakota. Ameron attended the bid opening at Lewis & Clark's office in Tea, South Dakota, for one of the System's Minnesota segments preceding the Project. Doc. 51 at ¶ 3. Sometime during Ameron and Lewis & Clark's dealings, Ameron sent Lewis & Clark three sample pipes of different sizes affixed with the Ameron logo to display in Lewis & Clark's South Dakota facilities. Doc. 51 at ¶ 2; Doc. 51-1. Additionally, from March 2017 through April 2017, Ameron delivered product to Eagle Butte, South Dakota, for an entirely different job. Doc. 39-1 at ¶ 11. In 2017, Ameron's sales in South Dakota were $1.6 million of its $57 million in total sales. Doc. 39-1 at ¶¶ 13–14.

On May 17, 2018, Lewis & Clark commenced this action. Doc. 1-1 at 1. Lewis & Clark seeks to recover: (a) the expense to remove and replace the allegedly defective pipe; (b) liquidated damages totaling $1,350 per day from November 17, 2017, to the date the project is substantially complete; and (c) consequential damages. Doc. 1-1 at ¶¶ 8–10. Carstensen filed a third-party action against Third-Party Defendant Ameron. Ameron filed a Motion to Transfer Venue to the District of Minnesota under 28 U.S.C. § 1404(a), Doc. 13, which Lewis & Clark and Carstensen opposed, Docs. 16, 40. This Court denied Ameron's § 1404(a) Motion to Transfer Venue. Doc. 42.

Ameron's motion to dismiss under Rule 12(b)(2) argues that there is no personal jurisdiction over Ameron in the District of South Dakota. Docs. 38, 39. The facts used to contest Ameron's motion come primarily from two affidavits and three exhibits filed by Lewis & Clark. Docs. 50, 51. Lewis & Clark and Carstensen argue that Ameron waived any personal jurisdiction defense argument by not raising the defense alongside the previous 28 U.S.C. § 1404(a) motion to transfer for inconvenient forum, or, alternatively, Ameron has sufficient contacts with South Dakota for this Court to exercise personal jurisdiction over it. Docs. 46, 49. This Court first considers the waiver argument to determine whether it is necessary to address the question of personal jurisdiction over Ameron in South Dakota.

## II. Discussion

### A. Waiver of Personal Jurisdiction

Lewis & Clark and Carstensen argue that Ameron waived any personal jurisdiction argument under Rule 12(b)(2) by not raising the defense with its earlier-filed motion to transfer venue under 28 U.S.C. § 1404(a). Doc. 46 at 2–3; Doc. 49 at 3–5. The requirement that a court have personal jurisdiction over the parties is a due process right that in fact may be waived either explicitly or implicitly. See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703–05 (1982); E. Coast Test Prep LLC v. Russ, Civil No. 15-3705, 2018 WL 3795942, *4 (D. Minn. Aug. 9, 2018), appeal docketed, No. 18-3197 (8th Cir. Oct. 15, 2018) ("Although 'waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege,' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), a personal-jurisdictional defense may be unintentionally waived by failing to raise it in a Rule 12 motion or responsive pleading, see Fed. R. Civ. P. 12(h)(1)"). Ameron argues that it did not waive its ability to challenge

5

personal jurisdiction because it was not required to raise a personal jurisdiction argument with its § 1404(a) motion. Doc. 52 at 1–2.

Resolution of the waiver question turns on an interpretation of Rule 12 of the Federal Rules of Civil Procedure. Rule 12 allows a defendant to "assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19." Fed. R. Civ. P. 12(b). A motion raising one of these defenses "may be joined with any other motion allowed by this rule." Fed. R. Civ. P. 12(g)(1). "[A] party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Specifically, a party waives a Rule 12(b)(2) defense of lack of personal jurisdiction if the defense was not included in the party's first Rule 12(b) motion. See Fed. R. Civ. P. 12(h)(1). However, a § 1404(a) motion to transfer venue is not one of the motions enumerated in Rule 12(b) and is not explicitly governed by the requirements of consolidation and waiver in Rule 12(g) and (h). See Fed. R. Civ. P. 12(b), (g)–(h). Based on the plain reading of Rule 12, an earlier filed § 1404(a) motion does not waive a defendant's ability to challenge personal jurisdiction in a later-filed Rule 12(b)(2) motion.

Yet Lewis & Clark and Carstensen argue that, based on case law from other circuits, Ameron waived its personal jurisdiction defense by not asserting it with the earlier §1404(a) motion to transfer venue. The leading case in support of that argument is Sangdahl v. Litton, 69 F.R.D. 641 (S.D.N.Y. 1976). In Sangdahl, the United States District Court for the Southern District of New York held that a defendant was barred from challenging personal jurisdiction by not joining the Rule 12(b)(2) motion with the earlier-filed § 1404(a) motion. Id. at 642–43. In

Sangdahl, after the court denied the defendant's § 1404(a) motion, the defendant filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Id. at 642. The court in explaining why and how defendant waived challenges to personal jurisdiction by not including the challenge with his §1404(a) motion, reasoned that "the underlying facts to support a motion to change venue were essentially the same as the facts upon which [the defendant] grounds his motion for lack of jurisdiction over the person, and were apparent to defendant upon the very commencement of suit." Id. at 642–43; see also Elderberry of Weber City, LLC v. Living Ctr.-Se., Inc., No. 6:12-CV-00052, 2013 WL 1164835, at *3 (W.D. Va. Mar. 20, 2013) (holding based on Sangdahl that "a motion to transfer venue is so similar to a motion to dismiss for improper venue that Rule 12(g)'s consolidation requirement applies"). Unlike in Sangdahl, the underlying facts relied upon for Ameron's § 1404(a) motion are not "essentially the same as the facts [underlying the] motion for lack of jurisdiction." Sangdahl, 69 F.R.D. at 642–43. Although there are some overlapping facts, the submission of affidavits and exhibits on the present motion to dismiss provided important and different facts necessary to consider the personal jurisdiction issue. Docs. 39-1, 50, 51. This appears not to be a situation where Ameron is bringing a largely repetitive motion or intentionally and strategically delayed its motion to dismiss for lack of personal jurisdiction.

Although the Eighth Circuit and this Court have not previously addressed the interplay between § 1404(a) and Rule 12(b) motions, other district courts within the Eighth Circuit have. These courts have held that § 1404(a) motions are not the equivalent of Rule 12 motions. See Dekalb Genetics Corp. v. Syngenta Seeds, Inc., No. 4:06CV01191-ERW, 2007 WL 1223510, at *5 (E.D. Mo. Apr. 24, 2007) (holding that a § 1404(a) motion does not waive a defendant's objection to personal jurisdiction under Rule 12(b)(2)); Wilson v. United States, No. 4:05-CV-562, 2006 WL 3431895, at *2 (E.D. Ark. Nov. 28, 2006) (holding that "a motion to transfer the

7

case pursuant to 28 U.S.C. § 1404(a) is not an objection to improper venue, which under Federal Rule of Civil Procedure 12(b) would be required to be made before answer"); Red Wing Shoe Co., Inc. v. B-Jays USA, Inc., No. CIV. 02-257DWFAJB, 2002 WL 1398538, *2 (D. Minn. June 26, 2002) (holding that "[a] motion to transfer venue for the convenience of parties or witnesses or in the interests of justice, brought pursuant to 28 U.S.C. § 1404(a), is not a motion under 12(b)(3) of the Federal Rules of Civil Procedure, so the waiver provision of Rule 12(h) is inapplicable").

In short, a § 1404(a) motion is not the same thing as a Rule 12(b)(3) motion under the Federal Rules of Civil Procedure. Neither Rule 12 nor § 1404(a) provide that the motions should be treated the same. While § 1404(a) and Rule 12(b)(3) are both motions regarding venue, a Rule 12(b)(3) motion is the appropriate way to challenge improper venue, while a § 1404(a) motion is the appropriate way to assert an inconvenient venue. See 28 U.S.C. § 1404(a); Fed. R. Civ. P. 12(b)(3). Different tests and facts are used to determine whether to grant or deny the different motions. See generally Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court, 571 U.S. 49 (2013) (discussing the differences between a motion under § 1404(a) and Rule 12(b)(3)). While it is more efficient for a court to consider a § 1404(a) motion and a Rule 12(b)(2) motion for lack of personal jurisdiction at the same time, the interests of judicial efficiency, standing alone, do not justify depriving a defendant of its due process right to challenge personal jurisdiction, absent clear statutory or case authority to the contrary. The waiver provision under Rule 12(h) and the joining of motions provision under Rule 12(g) do not apply to a § 1404(a) motion, so Ameron has not waived its defense of lack of personal jurisdiction.

B.   **Personal Jurisdiction**

The showing a plaintiff must make when the defendant contests personal jurisdiction under Rule 12(b)(2) depends on the stage of the case and the method the court employs to resolve the

jurisdictional dispute. See K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). At trial or after an evidentiary hearing, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015); Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). But when, as here, the court limits its review of a Rule 12(b)(2) motion solely to affidavits and other written evidence, the plaintiff "need only make a prima facie showing of [personal] jurisdiction." Dakota Indus., 946 F.2d at 1387. "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." K-V Pharm. Co., 648 F.3d at 592 (internal marks and citations omitted). Because Third-Party Defendant Ameron has moved to dismiss for lack of personal jurisdiction, this Court construes the evidence the parties submitted in the light most favorable to Third-Party Plaintiff Carstensen and resolves all factual disputes in Carstensen's favor. Id.

A federal court sitting in diversity may exercise jurisdiction over nonresident defendants only if both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause are satisfied. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). Because South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause, the question here is whether asserting personal jurisdiction over Ameron comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

Under the Due Process Clause, personal jurisdiction may be either general or specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924–25 (2011). Courts with general jurisdiction over a defendant may hear "any and all claims" against the defendant, even if

9

those claims are unrelated to the defendant's contacts with the forum state. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quoting Goodyear, 564 U.S. at 919). For general jurisdiction to exist, the defendant's contacts with the forum state must be "so 'continuous and systematic'" that the defendant is "essentially at home" there. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Carstensen argues that Ameron is subject to general personal jurisdiction in South Dakota essentially because the contacts Ameron has with South Dakota impact the state more because of its smaller economy. Doc. 49 at 6–12. In Daimler, the Supreme Court rejected the argument that a corporation is subject to general personal jurisdiction in every state in which the corporation "engages in a substantial, continuous, and systematic course of business." 571 U.S. at 137–38 (citation omitted). For general jurisdiction to exist, the Court explained, the corporation's contacts with the forum state must be "so continuous and systematic" that the corporation is "essentially at home" there. Id. at 138 (quoting Goodyear, 564 U.S. at 919). The Court reasoned that the "paradig[m]" forums in which a corporation will be "at home" are the corporation's place of incorporation and its principal place of business. Id. at 137 (alteration in original) (citation omitted). However, the Court did not "foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19 (internal citations omitted). The Supreme Court further refined general personal jurisdiction last year in BNSF Railway Co. v. Tyrrell, 137 S. Ct. 1549 (2017). In Tyrrell, the Court reasoned that the general jurisdiction "inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them." Id. at 1559 (quotation marks and citations omitted). Thus, the general

jurisdiction inquiry is on the corporation's activities in their entirety and not on how a corporation's isolated contacts impact a state's economy. A corporation that operates in many states with small economies can scarcely be deemed at home in all of such states merely because a state's economy is small. See id.

General jurisdiction does not exist over Ameron in South Dakota. Ameron is incorporated in Delaware and headquartered in California. Ameron has no offices, employees, or bank accounts in South Dakota, nor does it manufacture any product in South Dakota. Ameron has made sales in South Dakota, but those sales are insufficient to justify general jurisdiction under these circumstances. See id. (declining to find general jurisdiction over a railroad company in Montana based on the entirety of its activities, even when the railroad company received about 10% of its total revenue from the state). Ameron's presence at another bid opening in South Dakota, sales to a different job in South Dakota, and marketing by sending office display pipe samples marked Ameron to Lewis & Clark are insufficient to justify general jurisdiction in South Dakota. Ameron's contacts with South Dakota fall short of the sort of continuous and systematic presence necessary for general jurisdiction. See Collegesource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1074–75 (9th Cir. 2011) (holding that general jurisdiction is inappropriate when contacts with state are sporadic and business has no offices, no staff, and is not registered to do business in forum state); Kimball v. Countrywide Merchant Servs., No. CIV.A.04-3466, 2005 WL 318752, at *3–4 (E.D. Pa. Feb. 8, 2005) (holding that there is no general jurisdiction where defendants had made some sales to forum state, but had no employees or property in the forum state).

Specific jurisdiction, by contrast, may be based on a defendant's solitary or irregular contact with the forum state. Daimler, 571 U.S. at 127. Specific jurisdiction exists when a defendant purposefully directs its activities at the forum state "and the litigation results from

11

alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Courts may exercise specific jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state such that having to defend a lawsuit there "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (quotation omitted). These minimum contacts must be based on "some act by which the defendant purposefully avails" himself of the forum state "such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474–75 (quotations omitted). It is the defendant, rather than the plaintiff or a third party, who must establish the minimum contacts in the forum state. Walden v. Fiore, 571 U.S. 277, 284 (2014). Moreover, the defendant's contacts must be "with the forum State itself, not . . . with persons who reside there." Id. at 285; see also id. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

Under Eighth Circuit precedent, five factors guide evaluating whether the constitutional requirements for personal jurisdiction have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Deloney v. Chase, No. 17-3170, slip op. at p. 7 (8th Cir. Dec. 4, 2018) (per curiam) (quoting K-V Pharm. Co., 648 F.3d at 592–93); see also Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522–23 (8th Cir. 1996) (footnote omitted); Land-O-Nod v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983). The

first three factors are the most important while the last two are secondary. Digi-Tel Holdings, Inc., 89 F.3d at 523.

Ameron argues that this case should be dismissed because Carstensen "cannot point to any actions of Ameron sufficient to establish the requisite minimum contacts" with South Dakota. Doc. 39 at 7. Ameron contends that "[o]ther than one unrelated job from March 2017 to April 2017, Ameron has not done business, shipped, or delivered product to or in South Dakota." Doc. 39 at 6. However, viewing the evidence in the light most favorable to Carstensen, Ameron representatives traveled to South Dakota for meetings concerning the Project and sent emails and made phone calls to individuals in South Dakota about the Project. Although emails, phone calls, and mailings may count towards the required minimum contacts, Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1433–34 (8th Cir. 1995), they do not establish personal jurisdiction by themselves. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 594 (8th Cir. 2011) (holding that "scattered" emails and phone calls and a wire transfer of money to the forum state were "incidental contacts" that were insufficient to establish specific jurisdiction); Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); Bell Paper Box, Inc., 53 F.3d at 923 ("The use of interstate facilities, such as telephones or mail, is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." (quotation and internal quotation marks omitted)). Courts have sometimes applied this jurisprudence even when the emails, phone calls, or mailings are sizable. Burlington Indus. v. Maples Indus., 97 F.3d 1100, 1103 (8th Cir. 1996) (holding that 100 telephone calls from defendant to third party in forum state were "insufficient, alone, to confer personal jurisdiction"); Toro Co. v. Advanced Sensor Tech., Inc., No. 08-248 (DSD/SRN), 2008 WL 2564336, at *3 (D.

Minn. June 25, 2008) (holding that 300 emails as part of a national marketing campaign from defendant to forum state were not sufficient by themselves to warrant specific jurisdiction over defendant).

However, the emails and phone calls are not the only contacts Ameron had with South Dakota concerning the Project. Once Ameron was awarded the Project, an Ameron employee traveled to South Dakota for a meeting with project engineer Banner about the Project. During construction of the pipeline, Ameron representatives traveled to South Dakota to meet with Banner before traveling to the construction site and then back to overnight in South Dakota. After issues arose about the pipes being allegedly defective, Ameron attended a lengthy meeting in South Dakota with Banner, Lewis & Clark, and Carstensen to discuss the Project. Doc. 50 at ¶ 3; Doc. 51 at ¶ 4; Doc. 51-2; see Downing v. Goldman Phills, PLLC, 764 F.3d 906, 913–14 (8th Cir. 2014) (reversing a district court's dismissal of certain defendants for lack of specific jurisdiction because the defendants had sufficient contacts with the forum when they voluntarily entered the state on multiple occasions to negotiate a settlement for their own financial gain). Similar to the situation in Wessels, Arnold & Henderson, "[t]he numerous mail and telephone contacts coupled with the physical visits by [defendant], which were all related to the contract, are evidence of [defendant]'s contacts with [the forum state] and indicates [defendant]'s purposeful availment of the benefits and protections of [the forum state]." Wessels, Arnold & Henderson, 65 F.3d at 1434. Ameron knew that the Project was for Lewis & Clark, a South Dakota based business, that the Project engineer was likewise in South Dakota, that business meetings regarding the Project occurred in South Dakota, and that it was communicating with people in South Dakota concerning the Project. Ameron could have reasonably foreseen being "haled into court" in South Dakota considering Ameron's involvement in discussions and meetings in South Dakota about the Project and

allegedly defective pipe and its numerous communications with those in South Dakota about the Project which Ameron knew was tied to South Dakota. See Burger King, 471 U.S. at 475.

As for the five factors for specific personal jurisdiction identified in Eighth Circuit cases, Ameron's nature and quality of contacts with South Dakota included having representatives make trips to South Dakota for meetings in South Dakota concerning the Project, as well as sending emails and having telephone discussions with those working on the Project in South Dakota. The quality of the contacts included at least several trips by Ameron representatives to South Dakota and numerous emails and telephone calls all of which related to the Project at issue in the lawsuit. The cause of action arises out of Ameron's alleged failure to supply pipes that conform to the specifications set for the Project by the South Dakota project engineer Banner, and Ameron's meetings in South Dakota involved Banner representatives as did many of the emails and phone calls; that is, the contacts of Ameron to South Dakota regarding the Project appear to be directly related to the dispute and ultimate lawsuit. South Dakota has an interest in providing a forum for its resident business Lewis & Clark, and as this Court has previously explained at length, Doc. 42, the most convenient forum for the parties is the Southern Division of the District of South Dakota. Thus, a prima facie case exists under the Eighth Circuit factors for finding specific jurisdiction to exist in South Dakota over Ameron in this case.

Having concluded that Ameron purposefully established minimum contacts with South Dakota, this Court must consider whether exercising personal jurisdiction over Ameron "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co., 326 U.S. at 320). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. Ameron argues

that the parties had more contacts with Minnesota and the contacts that happened in South Dakota "could have just as easily been . . . across the state line in Minnesota." Doc. 52 at 9. This argument does not impact whether Ameron has sufficient contacts with South Dakota for this Court to exercise personal jurisdiction over it. These facts and arguments relate more to venue considerations, and this Court has already determined in denying Ameron's motion to transfer venue under 28 U.S.C. § 1404(a) that the Southern Division of the District of South Dakota with its courthouse in Sioux Falls is most convenient venue for the parties and witnesses. Doc. 42. Ameron concedes in its current motion that this "Court in Sioux Falls is geographically convenient for the parties." Doc. 52 at 9. South Dakota "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (quotation and internal quotation marks omitted). Under these circumstances, the exercise of personal jurisdiction over Ameron by this Court would not offend traditional notions of fair play and substantial justice.

Because of the stage at which this Court is considering the Rule 12(b)(2) motion to dismiss, this Court has limited its review to affidavits, the declaration, and other written evidence, and thus has found only that a prima facie case exists for specific personal jurisdiction over Ameron in South Dakota. See K-V Pharm. Co., 648 F.3d at 591–92; Dakota Indus., 946 F.2d at 1387. If Ameron had contested the facts contained in affidavits of Troy Larson and Scott Vander Meulen, Docs. 50, 51, this Court would have held an evidentiary hearing on personal jurisdiction. Rather than contesting the facts concerning Ameron's contacts to South Dakota related to the Project, Ameron relied on a Declaration of Troy Parrack that primarily submitted facts supporting an absence of general jurisdiction over Ameron in South Dakota. Doc. 39-1. The Parrack declaration omitted specific facts concerning Ameron representatives' trips to South Dakota related to the

Project and communications to those in South Dakota related to the Project. If, after discovery, the facts are different than what is contained in the Larson and Vander Meulen affidavits, this Court would reconsider the question of specific jurisdiction or possible transfer of venue. See Fed. R. Civ. P. 12(i) (allowing courts to defer until trial any defense listed in Rule 12(b)(1)-(7)). However, unlike in this Court's recent ruling in Tyrrell for Estate of Tyrrell v. BNSF Ry. Co., No. 4:17-CV-04120-RAL, 2018 WL 2944529 (D.S.D. June 12, 2018), there is no reason to have discovery strictly on matters concerning personal jurisdiction, because doing so would frustrate the goal of Rule 1 of the Federal Rules of Civil Procedure of a "just, speedy, and inexpensive" disposition of the case and because there exists a prima facie showing of personal jurisdiction over Ameron in South Dakota.

**III.    Conclusion**

Therefore, it is hereby

ORDERED that Ameron's Motion to Dismiss Claims of Third-Party Plaintiff Carstensen, Doc. 38, is denied.

DATED this 31st day of December, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE